IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JULIE BUTTARS, ) | |
| ) | Civ. No. 07-0204-E-BLW |
| ) | |
| Plaintiffs, ) | |
| ) | MEMORANDUM DECISION |
| v. ) | AND ORDER |
| ) | |
| CREEKSIDE HOME HEALTH, ) | |
| INC.; ALPINE HEALTH CARE, ) | |
| LLC, dba ALPINE HOME CARE; ) | |
| KORI SMITH; and CHERYL ) | |
| ABEL, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## INTRODUCTION

The Court has before it a motion for summary judgment brought by defendant Alpine, and a motion for fees and costs of service filed by plaintiff Buttars. The Court heard oral argument on September 11, 2008, and took the motions under advisement. For the reasons expressed below, the Court will grant both motions.

**1.   Alpine's Motion for Summary Judgment**

Plaintiff Buttars has brought a claim under Title VII against defendants –

**Memorandum Decision & Order – page 1**

including Creekside and Alpine – for sexual harassment. Alpine seeks summary judgment on the ground that it was not Buttars' employer. Both sides agree that (1) Title VII requires Buttars to prove that Alpine was her employer, and (2) two entities could be joint employers of Buttars. They disagree, however, about the test for determining whether Alpine was an employer of Buttars, and over whether questions of fact exist under the relevant test.

Title VII applies to an employer only if that employer employs 15 or more employees. *See* 42 U.S.C. § 2000e(b). A plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15-employee minimum standard. The Circuit uses the integrated enterprise test to judge the magnitude of interconnectivity for determining statutory coverage. *See Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 929 (9th Cir. 2003).

Alpine does not dispute that it employs more than 15 employees. *See Alpine Reply Brief* at p. 10. Accordingly, the Court will assume that Alpine is a statutory employer under the terms of Title VII. Buttars asserts that the same integrated enterprise test must be used to determine if Alpine is jointly liable with Creekside. The Court disagrees.

**Memorandum Decision & Order – page 2**

The "joint employer" issue is different from the "statutory employer" issue: "The [statutory employer] test does not determine joint *liability* . . . but instead determines whether a defendant *can meet the statutory criteria* of an 'employer' for Title VII applicability." *Anderson*, 336 F.3d at 929 (emphasis in original). Because the tests are employed for different purposes, their elements are different. The joint liability test was originally set forth in the context of a case brought under the Fair Labor Standards Act (FLSA). *See Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir.1983), disapproved of on other grounds by *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985). The Circuit there looked to the "economic reality" behind the relationship, considering whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 1470. The Circuit later looked to the same issues in the context of a Title VII case, examining whether the alleged joint employer (1) supervised the employees of the other employer, (2) had the power to hire and fire them; (3) had the power to discipline them, and (4) supervised their work sites. *Anderson*, 336 F.3d at 927. It is not enough that a parent company controls a variety of organizational tasks for its member companies – such as

**Memorandum Decision & Order – page 3**

operating payroll services – to take advantage of economies of scale. *Id*. at 928.

Applying those factors here, the Court must examine whether there are any genuine issues of material fact concerning whether Alpine (1) supervised Creekside employees; (2) had the authority to hire and fire Creekside employees, (3) had the authority to discipline Creekside employees, and (4) supervised the Creekside worksite.

Robert Breinholt was an owner of Alpine. *See Breinholt Deposition* at p. 16. At the same time, he was President of Creekside. *Id*. at p. 10. He provided services to both, which he billed through his management services company known as Apsen Management Associates. *Id*. at p. 9.

He was also the Administrator for both Alpine and Creekside. *Id.* As Administrator, he had responsibilities that included (1) supervision of the Creekside worksite, (2) the authority to hire and fire Creekside employees, and (3) the authority to supervise Creekside employees. *See Exhibit I to Affidavit of Counsel.* Breinholt did delegate much of this authority to the Creekside Director of Nursing Lori Smith, *id*. at p. 21, but he remained Smith's supervisor. *Id*. at p. 65.

The mere fact that Breinholt wore various hats – presiding over both Alpine (as an owner) and Creekside (as President), and working as Administrator at both – is not sufficient by itself to create issues of fact over whether the two entities are

**Memorandum Decision & Order – page 4**

Buttars' joint employers. The two entities are separate legal entities, and those distinct identities cannot be ignored absent special circumstances such as those listed in *Bonnette*. *See Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 582 (9th Cir. 2000). So what facts does Buttars identify tending to show that Alpine – or Breinholt through or on behalf of Alpine – was exercising some element of control over Buttar's employment relationship with Creekside?

Buttars points to the Creekside policy manual. It requires that the Administrator of Creekside "must be a full-time salaried employee [of Creekside] and employed by only one agency." *See Exhibit I, supra.* Given the Administrator's broad and all-encompassing authority over Creekside's operations and employees, this provision requires that the person filling the position be beholden to Creekside only, with no outside conflicts. Breinholt, however, was an Administrator of both Creekside and Alpine, and was billing both entities from his management firm, Aspen Management. He was neither a "full-time salaried employee" of Creekside nor "employed by only one agency."

What might this mean? Does it tend to show that Alpine was controlling Buttar's employment relationship with Creekside? It does not on its face because Breinholt had all the authority he needed from his positions at Creekside, as

**Memorandum Decision & Order – page 5**

President and Administrator, to control the employees at Creekside. There is no evidence that he was pulling strings from afar – if he pulled any strings, it was from *within* Creekside. Buttars fails to explain how this deviation from Creekside policy tends to show that Alpine was exercising some element of control over Creekside's employees.

Buttars also argues that Alpine employee Randy Schellhous exercised control over her employment. Schellhous was the Human Resources Manager for Alpine. He was the person to whom Buttars reported the ongoing sexual harassment she suffered, and he investigated the allegations on behalf of the owners of Alpine and Creekside. In addition, Schellhous provided many different human resources services to Creekside. Buttars argues that these circumstances at least create a genuine issue of material fact over whether Schellhous – an Alpine employee – was controlling some aspects of Buttars' employment at Creekside.

As *Anderson* held, joint liability is not established simply because a parent company provides various organizational services for its member companies, like payroll services. *Anderson*, 336 F.3d at 928. This case presents an even weaker case for joint liability because Creekside was paying Alpine for Schellhous's services as a Human Resource Manager. Schellhous would often do work for each of the entities owned by the four owners of Alpine and Creekside, and each entity

**Memorandum Decision & Order – page 6**

would pay Alpine for Schellhous's services. Buttars does not explain how Schellhous was exercising control *on behalf of Alpine* over her employment at Creekside when it was Creekside that requested his services and paid for them.

To avoid summary judgment, Buttars points out that (1) the payroll and paychecks for Creekside employees all came from Alpine's offices, (2) much of Creekside's training was conducted by Alpine employees, *see Hunt Affidavit* at ¶¶ 4-7, and (3) there was not a separate privacy officer under HIPPA for the two entities – they shared a single privacy officer who was an Alpine employee. *See Schellhous Deposition* at p. 59. Once again, however, these are simply organizational tasks that one company can provide for another to take advantage of economies of scale, and *Anderson* specifically rejected an argument that they count toward a finding of joint liability, as discussed above.

For all of these reasons, the Court finds that Alpine's motion for summary judgment must be granted.

**2.    Damage Issue**

Buttars has argued, in her response brief, that even if Alpine is not a joint employer, its employees should still be added to those of Creekside to determine Creekside's liability for damages. Title VII sets caps on damages that increase as the number of employees working for defendant increases. *See* 42 U.S.C.

**Memorandum Decision & Order – page 7**

§ 1981a(b)(3).  Thus, the more employees attributed to Creekside, the more exposure it has to damages.

The issue of Creekside's exposure to damages, however, has not been properly raised.  The only motion before the Court was Alpine's motion for summary judgment.  Thus, the only issues properly raised in this proceeding deal with Alpine's liability, not Creekside's.  Additional time remains for the filing of dispositive motions.  Until the issue is properly raised by Buttars, or by Creekside, the Court will decline to resolve it.

### 3. Costs and Attorney Fees Issue

Buttars seeks $50 in costs and $350 in attorney fees for filing a motion to recoup her costs of service after Alpine refused to sign a waiver of service.  Alpine refused to sign it on the ground that the Court lacked jurisdiction.

It is clear that Rule 4(d) allows for an award of costs and attorney fees when the party being served cannot show good cause for failing to sign the waiver.  The Advisory Committee notes state that "[i]t is not good cause for failure to waive service that the claim is unjust *or that the court lacks jurisdiction*."  *See* Rule 4(d)(2) Advisory Committee Note.

Because Alpine's excuse for failing to waive service is not sufficient to establish good cause, Alpine is liable for reasonable costs and attorney fees.  The

**Memorandum Decision & Order – page 8**

Court finds that the sum sought by Buttars – a total of $400 – is reasonable.

Alpine argues that the motion is premature because Butters must wait until the end of the lawsuit pursuant to Rule 54.  The Court disagrees.  In *Estate of Darulis v. Garate*, 401 F.3d 1060, 1063 (9th Cir. 2005), the Circuit held that Rule 4(d)(2) is a "free-standing cost provision" that is not limited by the provisions of Rule 54.  Indeed, in *Darulis*, the Circuit awarded costs and fees against the prevailing party for failing to waive service.  While *Darulis* did not specifically hold that a motion for fees and costs under Rule 4(d) may be resolved prior to a final judgment, that result follows from its holding that Rule 4(d) is a stand-alone provision not governed by Rule 54.  Accordingly, the Court will grant Buttars' motion for fees and costs.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Buttars' motion for fees and costs (docket no. 23) is GRANTED, and Alpine shall pay to Buttars the sum of $400.

IT IS FURTHER ORDERED, that Alpine's motion for summary judgment (docket no. 46) is GRANTED, and defendant Alpine Health Care LLC, dba Alpine Home Care, shall be DISMISSED from this case as a defendant upon payment of

**Memorandum Decision & Order – page 9**

the $400 to Buttars.



DATED:  **September 25, 2008**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 10**